**MARSHALL COUNTY REDI–MIX, INC.,
and Wright-Denaut Construction Co.,
of Plymouth, Indiana, Appellants,**

v.

**LaVerne MATTHEW and Martha P.
Matthew, Appellees.**

No. 184S19.

Supreme Court of Indiana.

Jan. 16, 1984.

B. Patrick Maloy, Mulligan & Maloy, North Judson, for appellants.

Orville W. Nichols, Nichols, Wallsmith & Weaver, Knox, for appellees.

PIVARNIK, Justice.

This cause comes to us on a petition to transfer from the Indiana Court of Appeals. The Starke Circuit Court heard the suit between the respondents, Marshall County Redi-Mix, Inc. (Redi-Mix) and Wright-Denaut Construction Co., and the petitioners, LaVerne Matthew and Martha Matthew. Redi-Mix sued to foreclose on a mechanic's lien lodged against the Matthews' property. The Matthews brought a counterclaim and sought damages. The trial court ruled in the Matthews' favor on both issues and awarded them $1,700.00 damages. The Court of Appeals, Third District, affirmed the trial court's decision in discharging the mechanic's lien but reversed the award of damages to the Matthews on their counterclaim. *Marshall County Redi-Mix, Inc. v. Matthew,* (1983) Ind.App., 447 N.E.2d 1165.

The question presented for our review is whether the stipulation by the parties that the materials and workmanship were both satisfactory bars a recovery of damages on behalf of the petitioners. We find that the Court of Appeals erred in reversing on the issue of damages. Transfer is granted and the opinion of the Court of Appeals is vacated.

The petitioners, LaVerne and Martha Matthew, were constructing a building for the storage of antique vehicles. They hired a construction firm to erect the building and the respondents, Redi-Mix and Wright-Denaut, were contracted to pour and finish the concrete floor. The concrete floor was to be poured prior to the installation of the walls in order to permit easier accessibility during the pouring of the floor. The floor was poured on January 3, 1980, and the trowelling and leveling was completed on January 4. Due to the cold weather, Redi-Mix supplied the Matthews with straw to spread on the concrete for insulation and protection against freezing temperatures. Despite this precaution, the concrete froze, leaving the top $1/16''$ of the $4''$ base in a crumbling and powdery condition. Later in January, LaVerne Matthew met with representatives of the contractors and General Portland Cement but reached no agreement about correcting the problem. The Matthews finished the building and began to use it although the floor was unsightly and the friable condition created dust. The Matthews refused to pay for the floor and Redi-Mix and Wright-Denaut sued to foreclose their mechanic's lien on the property. The cases were consolidated and the Matthews filed a counterclaim alleging that the contractors were responsible for the concrete freezing and seeking damages in the amount necessary to correct the problem. The parties stipulated that the contractors were joint venturers or partners in the enterprise. They also stipulated that the materials and workmanship were satisfactory; the sole problem was the freezing of the concrete. Both parties called expert witnesses to testify about the concrete freezing and how to correct the problem. The trial court refused to enforce the mechanic's lien and awarded the Matthews $1,700.00 in damages.

The Court of Appeals held that the trial court was correct in determining that the contractors could not enforce the mechanic's lien, 447 N.E.2d 1167, but reversed the award of damages. The Court of Appeals stated that the Matthews were barred from recovering damages because they had sti-

pulated that the workmanship was satisfactory. 447 N.E.2d at 1168.

■■■ Although we are vacating the Court of Appeals' opinion because of its treatment on the issue of damages, we agree with its holding concerning the mechanic's lien. We adopt the applicable portions of that opinion and make it part of this opinion as follows:

"In establishing their right to foreclose, the burden was on the contractors to prove that the lien met the statutory requirements. *Blade Corp. v. American Drywall, Inc.*, (1980) Ind.App., 400 N.E.2d 1183. *See* IC 1976, 32–8–3–1 *et seq.* (Burns Code Ed., Repl.1980). The Matthews have not alleged any failure to comply with the applicable statutes. The owner of the property subject to a mechanic's lien may file a set-off, *see Goodwin v. Schwartz*, (1945) 115 Ind.App. 422, 59 N.E.2d 363, or a counterclaim to the lienholder's complaint. *Jose-Balz Co. v. DeWitt*, (1931) 93 Ind.App. 672, 176 N.E. 864. The Matthews filed a counterclaim, asserting that the concrete froze, rendering the floor unsuitable and that the contractors were responsible. At the time the concrete froze, the floor had been poured but not yet sealed.

\*  \*  \*  \*  \*  \*

Where the subject matter of a construction contract has been destroyed during construction through no fault of the property owner, the contractor cannot enforce a mechanic's lien. *Hipskind Heating & Plumbing Co. v. General Industries, Inc.*, (1963) 136 Ind.App. 647, 194 N.E.2d 733, *trans. denied*, 246 Ind. 215, 204 N.E.2d 339. In determining whether the loss was total, we consider only the evidence most favorable to the judgment of the trial court and the reasonable inferences which may be drawn from that evidence. *Smith v. Bruning Enterprises, Inc.*, (1981) Ind.App., 424 N.E.2d 1035, 1037. We will affirm the trial court's judgment if there is evidence of probative value to sustain it. The record contains expert testimony that one method of repairing the floor would be to remove the old floor and lay a new one. This is sufficient to support the judgment of the trial court discharging the liens. The partial use of the building by the Matthews does not prevent them from claiming the loss. *Cf. Jose-Balz Co., supra* (Occupation of the premises does not prevent the filing of a counterclaim if the owner complained to the contractor upon discovery of the defect).

Because the record contains evidence that the floor froze through no fault of the Matthews and that one method of repair would require removal of the entire floor we affirm the trial court's discharge of the mechanic's lien."

■■■ While we agree with the treatment of the mechanic's lien, we feel the Court of Appeals erred in reversing the award of damages. The Court of Appeals felt that when the Matthews stipulated that the workmanship was satisfactory, the contractors were absolved of any fault and therefore the Matthews could not recover damages in addition to the discharge of the mechanic's lien. We find that the Court of Appeals gave an interpretation to the stipulation that was not intended by any of the parties. The Matthews did stipulate that the workmanship was satisfactory but it was also part of that stipulation that the issue to be tried to the bench was the placement of responsibility for the freezing of the concrete floor. Both parties agreed that this was the issue remaining for the trial court to determine. We agree with the dissent, in which Judge Garrard wrote that "[i]t appears to me that the parties and the trial court treated the stipulation as obviating inquiry into the quality of the materials or the workmanship that went into pouring the floor. I believe we should do likewise."

■■■ This Court will affirm the trial court's decision if it is sustainable upon any legal theory. *Thornton v. Pender*, (1978) 268 Ind. 540, 377 N.E.2d 613. The question before us turns upon what the parties intended when they stipulated that the workmanship and materials were satisfactory.

"... Stipulations should receive a fair and liberal construction, and be interpreted in the light of the whole record; and all reasonable intendments thereof should be construed in favor of the parties in whose favor they are made. However, a court will not, by construction, extend a stipulation so as to give it an effect beyond its terms and the intentions of the parties.

A stipulation must be construed as a whole, and the intention of the parties collected from the entire instrument and not from detached or isolated portions. Furthermore the provisions of the stipulation are to be considered in the light of the surrounding circumstances, and where the parties to a stipulation have given a practical construction to it by their acts and conduct, such construction is entitled to great, if not controlling, weight in determining its proper meaning." (footnotes omitted).

I.L.E. Stipulations § 3.

■ Upon an appeal the parties ought to be held to the interpretation which they put upon the agreement below, and to the theory upon which they tried the case. *Adams v. Davis*, (1886) 109 Ind. 10, 9 N.E. 162; *see also City of Evansville v. Bartlett*, (1962) 243 Ind. 464, 186 N.E.2d 10; *Swisher v. Keeler*, (1954) 124 Ind.App. 352, 117 N.E.2d 750; *Morgan v. Sparling*, (1953) 124 Ind.App. 310, 115 N.E.2d 514. In *Adams* the appellant instituted an action of replevin to recover possession of a horse held by the appellee as treasurer of Sullivan County. The treasurer claimed the right to possess and sell the horse, under a levy made by him, because the appellant had become delinquent in taxes assessed against him. This Court observed that

"[d]uring the trial an agreement was made by counsel as to the payment of taxes by appellant, which was intended to serve as evidence in the case. That agreement is broad enough in terms, if literally construed, to cover the taxes here in question; but it is manifest from the whole record, that counsel and the court gave it a different interpretation,

and tried the case from beginning to end upon the theory that the agreement did not, and was not intended to cover the tax here in question, and for which the levy was made upon the horse."

109 Ind. at 21, 9 N.E. at 167.

A careful reading of the evidence indicates that the parties considered the real issue to be one of fixing the responsibility for the freezing of the concrete floor. Both parties offered evidence on this issue and it is not shown anywhere that the respondents objected to the presenting of this evidence because the petitioners had foreclosed the issue by stipulation. The language used in the stipulation shows that the parties intended the stipulation to apply to the application and structure of the floor and reserved the issue of the responsibility in preventing the freezing for trial. The acts of the parties in trying the cause in that manner is apparent from the record. The issue of placing the responsibility for the damage was properly before the trial court.

■ The substance of the expert testimony was that the freezing of freshly laid concrete in January in northern Indiana is a predictable event and one that can be prevented by the contractor. The experts also felt that the contractor had the responsibility to protect the new concrete from freezing. An expert witness, Mr. Bau, testified that with proper application of straw and Visqueen, the freezing could have been prevented and that this was standard procedure for concrete contractors. 17A C.J.S. Contracts § 515e concerns the defects due to soil or weather conditions. Ordinarily, such defects are chargeable to the builder unless the owner prevents the builder from overcoming them or unless the defect is caused after compliance with the contract. 13 Am.Jur.2d Building and Construction Contracts § 64 states the general rule as follows: "One who contracts absolutely and unqualifiedly to erect a structure for a stipulated price, in other words, enters into an entire or indivisible contract to complete such work, must bear the loss occasioned by the accidental de-

struction or damage of the building before completion." Although Indiana has never directly decided the issue of who bears the loss in the event of concrete freezing, other jurisdictions have. *Brent v. Head, Westervelt & Co., et al.* (1908) 138 Iowa 146, 148–49, 115 N.W. 1106, 1107, held: "There was no provision in the contract whereby [the contractor] was relieved from protecting his work or material from the effects of freezing weather, and he cannot now claim that he should be released from liability because thereof. The evidence conclusively shows that buildings may be safely erected at any season of the year, if proper steps are taken to protect the material and construction work, and that such is the case is a matter of almost common knowledge." There is no claim here that the contract relieved the contractor from both protecting the concrete against the freezing weather and the resultant damage that occurred. Furthermore, it cannot be said that the Matthews accepted the floor as it was by moving vehicles into the building. They made objection to the quality of the floor before moving the vehicles into the structure and clearly indicated they were not accepting it in that condition. *Drost v. Professional Building Serv. Corp.*, (1972) 153 Ind.App. 273, 286 N.E.2d 846; *Jose-Balz Co. v. DeWitt*, (1931) 93 Ind.App. 672, 176 N.E. 864.

Finally, there was evidence that replacing the floor and pouring a new one could cost as much as $8,000.00. The sum of $1700.00 was within the evidence and the trial court was justified in entering judgment in that amount.

Transfer is granted, the opinion of the Court of Appeals is vacated and the trial court is affirmed.

GIVAN, C.J., and DeBRULER, HUNTER and PRENTICE, JJ., concur.